# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

SAMANTHA FEDORENKO,  )
                     )
    Plaintiff,       )
                     )   CAUSE NO. 3:16-CV-00202
    v.               )
                     )
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
                     )
    Defendant.       )

## OPINION AND ORDER

Plaintiff Samantha Fedorenko appeals the denial by the Social Security Administration of disability insurance benefits and supplemental security income benefits. Fedorenko claims the ALJ made several errors. Because I find that the ALJ improperly weighed the evidence of "other medical sources" including a psychiatric nurse practitioner and a nurse/psychotherapist, I will **REVERSE** the ALJ's decision and **REMAND** on this issue.

## Background

Fedorenko is a young woman, approximately 26 years old, who graduated from high school after being in a special education program. (R. 524.)[1] She successfully completed an 11-month training program to work as a massage therapist, but was later

---

[1] Citations to the record will be indicated as "R. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 12.

repeatedly fired from different jobs due to her difficulty to get along with others and to understand them. (R. 524, 22-23, 254.)

Fedorenko has a number of psychiatric impairments, and indeed the ALJ found she had schizoaffective disorder, attention deficit disorder, mood disorder, and substance addiction disorder. (R. 20.) While Fedorenko does not have physical limitations, the ALJ found that she was limited to work that involved only simple, routine and repetitive tasks that required only incidental contact with coworkers and the general public. (R. 23.) The ALJ came to this conclusion after considering the treatment notes of Fedorenko's therapists, the report of consultative psychological examiner James B. Goebel, Ph.D, and the opinions of state agency reviewing doctors Russell Taylor, Ph.D, and Donald Henson, Ph.D.

Fedorenko was in the Linden Oaks intensive outpatient program for conditions of psychosis, attention deficit disorder, and polysubstance dependence from January 27, 2012, until March 15, 2012, and then discharged for outpatient followup. (R. 395; Ex. 1F; Ex. 4F.) Upon her release, Fedorenko had two principal mental health providers, both of whom happen to be nurses. Their names are Christine Dahl and Priscilla Lynch. Ms. Dahl is a psychiatric mental health nurse practitioner, and Ms. Lynch is both a registered nurse and a psychotherapist holding a masters degree. Because their involvement with Fedorenko is critical to the disposition of this appeal, I will discuss their involvement with Fedorenko in some detail.

As for Nurse Practitioner Dahl, in a letter dated June 26, 2012, she explained that

Fedorenko had been under her care in the Linden Oaks outpatient clinic since March 28, 2012. (R. 270.) After listing her medication and the fact that Fedorenko was attending individual psychotherapy weekly, Dahl wrote in a letter she understood would be submitted to the Social Security Administration:

> Based on her psychiatric symptoms including low moods, sadness, anxiety, anhedonia, occasional psychosis (delusional thinking and paranoia), difficulty with thought processes, poor memory and focus, impaired judgment since January 2012, *it is unlikely she would have been able to successfully work at this time*. Furthermore, she has made attempts to get a job, but has not been successful in her interviews and job search. She currently volunteers once per week at Nursing Home "playing Bingo." She has been instructed not to drive based on her mental status and medications and mother often drives her to appointments.

(R. 270, Ex. 1F (emphasis added).) The ALJ does not mention Dahl by name, or state how much weight (if any) he gave to her opinion that Fedorenko could not work. However, the ALJ does refer to Dahl's therapy notes in his opinion, and cites to Exhibit 1F. (R. 24.) Dahl continued working with Fedorenko, and noted in her progress notes over a year later, that Fedorenko reported "I feel better than I have ever felt," yet also noted for the past 2 days she reported low mood, irritability, anhedonia (defined as an inability to experience pleasure), and social withdrawal and elevated anxiety. (R. 639-40.)

As noted, Priscilla Lynch, MS, RN (a psychotherapist), also submitted a letter on behalf of Fedorenko dated January 15, 2013, stating she had been seeing Fedorenko for outpatient psychotherapy since June 2012. (R. 522, Ex. 6F.) After stating that Fedorenko

3

follows both a medication and therapy regime, and that she takes her medications on a consistent basis, Lynch wrote:

> In terms of functioning, [Fedorenko] is able to take care of many of her basic needs but her parents provide support and direction on a consistent basis. [Fedorenko] does have a delusional belief system that is constant and present in our therapy sessions. [Fedorenko] makes choices and decisions from this belief system. In addition she presents with certain impulsive behaviors related to decision making that could impact at times on her safety. In addition she presents with certain personality traits that are of an odd nature that combined with the delusional thought processes impact on her ability to relate to other people. Her ability to accurately perceive social situations is compromised as well. There is also a mood component to her symptoms. There are times she presents with a sad and flat affect and then there are times when she almost presents with an excited or slightly giddy affect. It is my opinion that she has no control over this and so has affect regulation issues as well.
>
> In working with her over the past several months there have been concerns for her safety and decision making capabilities. I do believe that she requires supervision on a daily basis and *would have difficulty maintaining a job*. I do believe that she does desire to be able to work and be independent but does not have a stable enough mental health to be able to achieve these goals.

(R. 522, Ex. 6F (emphasis added).) Here is the sum total of what the ALJ had to say about Lynch's opinion: "the undersigned considered this opinion and the [sic] finds of [sic] the weight of the evidence shows that when the claimant is compliant with prescribed treatment, she is stable." (R. 28.)

A hearing was held via video before the ALJ on September 15, 2014, at which Fedorenko and a Vocational Expert ("VE") testified. (R. 35-36.) Fedorenko testified that she was not doing any massage therapy at the time because she couldn't really get out

of the house because she got nervous and had anxiety problems. (R. 43.) She claimed she got fired from multiple massage jobs because she misunderstood what people were saying. (R. 44.) Fedorenko said she was depressed that she can't work because she can't get out of the house. (R. 49.) She concedes she took the drug K2 (synthetic marijuana) for a year or two. (R. 50-51.) She had been taking mental health medication for about 2 years, but admitted that there was a time she did not take the medication as prescribed. (R. 54.) She did realize the medication was helping her and she felt better on it and that "the medicine actually makes me a little bit more happier." (R. 56.) Fedorenko does chores around the house for an allowance, like mow the lawn. (R. 59-64.) Then she has "some money for me on the side to go play pool, or something like that." (R. 61.) She lost her driver's license, and Fedorenko states she gets dropped off by her parents to a fun center in Knox, Indiana, to play pool. (R. 61-62.)

## Discussion

For Fedorenko to be eligible for SSI benefits under the Social Security Act, she must establish that she is disabled. This means she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). My task is to determine whether the ALJ's findings of fact are supported by "substantial evidence" and whether the ALJ applied the correct legal standard. *See* 42 U.S.C. § 405(g); *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

5

There is a five step process that is used to determine whether a person applying for benefits is disabled:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, [she] is not disabled. The fifth step assesses the applicant's RFC, as well as [her] age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, [she] is not disabled.

*Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

In this case, at steps one and two, the ALJ determined Fedorenko had not engaged in substantial gainful activity since her alleged onset date, and that she has the following severe impairments: schizoaffective disorder, attention deficit disorder, mood disorder, and substance addiction disorder. (R. 20.) At step three, the ALJ found her impairments did not meet or equal the severity of any listed impairment, after considering listings 12.02, 12.04, and 12.09. (R. 21-22.) He therefore formulated Fedorenko's RFC, which he defined as: "the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: only simple, routine and repetitive tasks and that require

6

incidental contact with coworkers and the general public." (R. 23.)

In formulating the RFC, the ALJ stated that "[n]o treating sources other than nurse Lynch has expressed an opinion regarding the claimant's ability to engage in work activity." (R. 27.) As mentioned before, it is true that the ALJ considered the opinion of Lynch, but he did so in a very conclusory way by simply noting that the weight of the evidence shows that when Fedorenko was compliant with her prescribed treatment, she was stable. (R. 28.) At step four, the ALJ found that Fedorenko had no past relevant work. And at step five, he found that there are jobs that exist in significant numbers in the national economy that Fedorenko can perform. (R. 28.) Accordingly, he concluded that Fedorenko was not disabled, as defined in the Social Security Act. (R. 29.)

The principal issue presented on appeal is whether the RFC was properly determined by the ALJ. RFC is a measure of what an individual can do despite the limitations imposed by her impairments. 20 C.F.R. § 404.1545(a). The RFC is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3. While the ALJ need not mention every piece of evidence in the record, the RFC determination must provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled. *Zblewski v. Astrue*, 302 Fed. Appx. 488, 492 (7th Cir. 2008); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

Fedorenko argues that the ALJ erred in not accepting the opinion of Priscilla

Lynch, M.S., R.N., who was Fedorenko's psychotherapist and submitted a written opinion in January 2013 in which she stated Fedorenko "would have difficulty maintaining a job" (R. 522). She also contends the ALJ erred in not addressing the letter from Christine Dahl, the nurse practitioner who focuses on psychiatric issues, stating "it is unlikely [Fedorenko] would have been able to successfully work at this time." (R. 270.)

SSR 16-3p requires the ALJ to consider the "entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2016 WL 1119029, at *4. In evaluating opinion evidence, the SSA differentiates between medical evidence from "acceptable medical sources" and "other sources." SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2006). "Acceptable medical sources" include licensed physicians and psychologists, and "other sources" include, *inter alia*, nurse practitioners and physician assistants. *Id.* at *1. Under the regulations in effect at the time Fedorenko's claim was filed, nurse practitioners are not considered "acceptable medical sources." While the Act was amended effective March 27, 2017, to include licensed advance practice registered nurses, the amendment is inapplicable to Fedorenko's claims as it only applies to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1502.

Opinions from other sources are not entitled to controlling weight like acceptable

medical sources (*see* 20 CFR 404.1527(d) and 416.927(d)), and cannot establish the existence of a medically determinable impairment (only evidence from an "acceptable medical source" can be used for this purpose); however, evidence from other sources may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function."  SSR 06-03P, 2006 WL 2329939, at *2.  Since there is a requirement to consider all relevant evidence in an individual's case record, "the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources.'"  *Id.* at *6.

SSR 06-03P clarifies that "[o]pinions from . . . medical sources [] who are not technically deemed 'acceptable medical sources' under [the agency's] rules [] are important and should be evaluated on key issues such as impairment severity and functional effects."  SSR 06-3p, 2006 WL 2329939, at *3.  Indeed:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.

*Id.*  Depending on the circumstances, the ALJ may determine that "an opinion from such a source is entitled to greater weight than a medical opinion from a treating source."  *Id.* at *5.

"In deciding how much weight to give to opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in § 404.1527(d)(2)."  *Phillips v.*

9

*Astrue*, 413 F. App'x 878, 884 (7th Cir. 2010); SSR 06-03P, 2006 WL 2329939, at *4-5 . In other words, the ALJ should consider how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with the other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise, and any other factors that tend to support or refute the opinion. SSR 06-03P, 2006 WL 2329929, at *4-5. Finally, the regulation provides:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at *6.

In this case, Dahl is a psychiatric mental health nurse practitioner, thus her opinion must be considered by the ALJ, and his decision should explain the weight he attributed to her opinion. I note that SSR 06-03P provides that an adjudicator *must consider* the opinions from medical sources who are not "acceptable medical sources," and that the adjudicator *generally should explain* the weight given to these opinions from other medical sources. SSR 06-03P, 2006 WL 2329939, at *6. As noted by the court in *Southward v. Commissioner of Social Security*, No. 11-14208, 2012 WL 3887212, at *3-4 (E.D. Mich. Sept. 7, 2012), this has created widely different interpretations by the district

courts about whether the ALJ is obligated to discuss his reasons for not crediting opinions from "other sources."

In this case, it is not even evident that the ALJ *considered* the opinion of Dahl. Indeed, he wrote that "[n]o treating sources other than nurse Lynch has expressed an opinion regarding the claimant's ability to engage in work activity." (R. 27.) But this was an error. There was someone other than Lynch who expressed an opinion, namely Dahl. And the Commissioner concedes that this was an error on the ALJ's part. (DE 20 at 8.)

The Commissioner nonetheless argues that it was sufficient for the ALJ to discuss Dahl's therapy notes in the decision, and to cite to the one-page opinion letter, even if he did not expressly discuss Dahl's opinion in the decision. But this same argument was addressed and rejected by Judge DeGuilio in *Newton v. Colvin*, No. 3:12-cv-776 JD, 2014 WL 772659, at *9 (N.D. Ind. Feb. 25, 2014). In *Newton*, the Commissioner argued it was not error for the ALJ to not explain the weight of the opinion of a nurse practitioner because the ALJ's decision had contained two citations to her treatment notes, "suggesting that he had considered her opinion even if he did not expressly discuss it in his decision." *Id.* The court rejected this, finding the citations to the treatment notes "[did] not reflect that the ALJ was aware of or had considered her opinions relative to the severity of [claimant's] impairments and how they impacted her ability to function." *Id.* "To the contrary, the ALJ's decision specifically listed each of the medical sources whose opinions he considered and explained the weight he gave to each, but did not

11

reference or acknowledge [the nurse practitioner's] opinions." *Id.* Similarly, in this case, the ALJ went through each of the medical sources and specifically stated how much weight he gave to each opinion, but did not acknowledge that Dahl had an opinion about Fedorenko's ability to work.

The ALJ's decision in this case is also deficient because he did not describe the weight he gave Dahl's opinion, or use the criteria listed in § 404.1527(d)(2). In other words, the ALJ failed to consider how long Dahl had known Fedorenko, how often they saw each other, how consistent the opinion was with other evidence, or how well the source explained the opinion. Dahl's opinion is especially important and relevant in this case, where there is no treating physician opinion. Given Fedorenko's mental impairments, one would think that the opinion of a psychiatric mental health nurse practitioner would be especially important to consider and address. *See Ferree v. Colvin*, No. 13-cv-1113-JPG-CJP, 2014 WL 6459886, at *9 (S.D. Ill. Nov. 18, 2014) (finding where the treating therapist was "plaintiff's primary source for mental health treatment and her treatment notes make up a significant portion [of] plaintiff's record . . . [i]t seems apparent that the ALJ should have at least addressed [the therapist's] opinions in forming his mental RFC."). The ALJ's failure to consider and address Dahl's opinion therefore constitutes error.

In support of its position, the Commissioner points out that Dahl's therapy notes were considered by Dr. Taylor and Dr. Henson. (DE 20 at 9.) This is neither here nor there. The Commissioner cites no legal authority in support of the proposition that it is

sufficient if the state doctors consider the other medical source opinions, and I don't see how that is relevant in determining whether *the ALJ* properly considered and explained the weight given to the opinions from other medical sources.

The Commissioner also argues that Dahl's opinion merely addressed a legal issue reserved for the Commissioner. However, it is settled that:

> [O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

SSR 96-5p, 1996 WL 374183, at *3. While "a medical opinion on an ultimate issue such as whether the claimant is disabled is not entitled to controlling weight, the ALJ must consider the opinion." *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004). Thus, while Dahl's opinion was not entitled to controlling weight, at a minimum, it needed to be evaluated and addressed by the ALJ. The failure to do so necessitates a remand.

Let's move on to the ALJ's handling of Nurse Lynch. The ALJ acknowledged that Lynch qualifies as an "other source" and does address her opinion that Fedorenko "would have difficulty maintaining a job." (R. 27-28.) However, instead of weighing the factors set forth in § 404.1527(d)(2), such as how long Fedorenko had visited Lynch, the nature of their relationship, how frequently she saw Fedorenko, how relevant her opinion was, and her area of expertise, the ALJ simply states: "[t]he undersigned

13

considered [Lynch's] opinion and the [sic] finds of [sic] the weight of the evidence shows that when the claimant is compliant with prescribed treatment, she is stable." (R. 28.) This kind of perfunctory analysis doesn't cut it. What's more, this brief discussion fails to consider how Fedorenko's limited insight and judgment might affect her compliance with medication. As the Seventh Circuit has noted, "people with serious psychiatric problems are often unable to take their medications consistently." *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011). Thus "the Seventh Circuit has cautioned ALJs against placing too much weight on the noncompliance of a mentally impaired claimant." *Medina v. Colvin*, No. 14 C 2669, 2015 WL 7755424, at *7 (N.D. Ill. Dec. 2, 2015).

In sum, on remand, the ALJ should evaluate the opinions set forth by Lynch and Dahl by using the factors set forth in 20 C.F.R. §§ 404.1527, 416.927, and SSR 06-03p.

## Conclusion

For the reasons stated above, the ALJ's decision denying benefits is **REVERSED** and this cause is **REMANDED** for further proceedings consistent with this order. The other issues raised by Fedorenko may also be considered by the ALJ on remand.

**SO ORDERED**.

ENTERED: August 28, 2017

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**